# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| OHIO SECURITY INSURANCE COMPANY a/s/o SKYWAYS PETROLEUM LLC DBA COMFORT INN & SUITES, | ) ) ) ) ) | CASE NO. 5:24-cv-267 |
| PLAINTIFF, | ) ) | JUDGE SARA LIOI |
| vs. | ) ) ) | MEMORANDUM OPINION AND ORDER |
| BRAKEFIRE, INCORPORATED DBA SILCO FIRE & SECURITY, | ) ) ) ) | |
| DEFENDANT. | ) | |

This matter is before the Court on the motion of defendant Brakefire, Incorporated dba Silco Fire & Security ("Silco") for judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c). (Doc. No. 11 (MJOP).) Plaintiff Ohio Security Insurance Company ("Ohio Security") opposes the motion (Doc. No. 12 (Opposition)), and Silco has filed a reply. (Doc. No. 14 (Reply).) For the reasons that follow, the motion is granted and the case is dismissed.

## I.      BACKGROUND

At all times relevant to the present dispute, Skyways Petroleum LLC dba Comfort Inn & Suites (the "insured") operated a hotel upon its commercial property located in Kent, Ohio. (Doc. No. 1 (Complaint), at 8–9[1] ¶¶ 2, 7.) The insured held a policy issued by Ohio Security that

---

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

"provided coverage for, among other things, damage to the [hotel and] property[.]" (*Id*. at 9 ¶ 3.).

Prior to February 3, 2022, the insured "hired [Silco] to maintain the fire sprinkler system" on its property. (*Id*. at 9 ¶ 6.) On February 3, 2022, a "water event" occurred in the hotel, which caused significant water damage to the property. (*Id*. at 9 ¶ 7.) An investigation revealed that the damage was due to the presence of water in the fire sprinkler system that froze and caused the pipes to burst. (*Id*. at 9 ¶ 9.) According to the complaint, Silco was responsible for leaving the water in the fire sprinkler system and causing the water damage. (*Id*. at 9 ¶¶ 8–9.) The insured filed a claim with Ohio Security, and, pursuant to the terms of the policy, Ohio Security paid "substantial sums" to the insured to cover the damage. (*Id*. at 9 ¶ 10.).

On January 11, 2024, Ohio Security initiated an action against Silco in state court to recover in subrogation for the amount paid to its insured for the water damage. (*See generally id*.) In its complaint, Ohio Security raises a single cause of action sounding in common law negligence. (*See id*. at 10–11 ¶¶ 13–16.) In particular, Ohio Security alleges that Silco breached its duty to the insured "to exercise reasonable care and caution in the maintenance of the fire sprinkler system" at the hotel. (*Id*. at 10 ¶¶ 13–14.) The complaint further lists the ways in which Silco was allegedly negligent in maintaining the fire sprinkler system. (*See id*. at 10 ¶ 14.) Ohio Security seeks $3,740,373.10 in monetary damages, plus any future payments and costs. (*Id*. at 11.).

On February 12, 2024, Silco removed the action to federal court on the basis of diversity jurisdiction. (Doc. No. 1 (Notice of Removal), at 2 ¶ 4.) Thereafter, Silco answered the complaint, and attached to its answer the contract entered into between the insured and Silco covering the installation, inspection, and maintenance of the fire sprinkler system. (Doc. No. 10 (Verified Answer), at 2 ¶ 6; *see* Doc. No. 10-1 (Agreement), at 42–53.) Relevant to the present dispositive

motion, under the heading of "General Terms & Conditions[,]" the contract provides, in part:

> <u>LIMITATIONS OF LIABILITY</u>: Silco is not an insurer. The amounts payable to Silco are based upon the value of the services and the scope of liability herein and are unrelated to the value of the Customer's property or property of others located in the premises. No suit or action shall be brought against Silco more than one (1) year after the accrual of the cause of action. In case of any claim or loss, Customer and Silco mutually agree that their respective insurance companies shall have no right of subrogation against the other on account thereof. If Silco is found negligent or otherwise liable for any goods sold and/or work performed, then Silco's liability shall be limited to a maximum of $10,000, and this liability shall be exclusive; upon request and with payment of an additional fee this maximum liability can be increased and the increased limit will be set forth in a letter provided by Silco. Silco shall not be liable for any claims for any improper and/or imperfect performance based on the failure of any system to function effectively due to causes beyond the control of Silco, such as wear and tear, tampering, changes to the protected areas, failure of Customer to authorize modifications or repairs or conduct required or recommended inspection/testing/maintenance, intentional and/or violent acts of third parties against Customer's employees, students, or others on the premises, and faulty design/installation by others.

(Doc. No. 10-1, at 43, Sec. A (capitalization and underlining in original).) The answer is verified by Silco's authorized representative, Dave Fraser, who attested to the truth and accuracy of the answer and its attachments, and further attested to the fact that the insured entered into the agreement with Silco and agreed to the terms and conditions contained therein. (Doc. No. 10, at 11; *see id.* at 2 ¶ 6.).

In its motion, Silco argues that it is entitled to judgment in its favor on Ohio Security's negligence claim because the only obligation owed by Silco stems from its contract with the insured. It is Silco's position that the existence of a contract prevents Ohio Security, as the insured's subrogee, from asserting a negligence cause of action addressing the same action governed by the contract. Additionally, Silco posits that Ohio Security's complaint is barred by the contract's one-year statute of limitations and mutual waiver of the right of subrogation. (Doc. No. 11, at 1.).

3

## II.     STANDARD OF REVIEW

Silco brings its motion pursuant to Rule 12(c), which provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard of review for a motion for judgment on the pleadings is the same as for a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001) (citing *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998)). "[A]ll well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 240 (6th Cir. 2011) (citation omitted).

"A complaint need not contain 'detailed factual allegations.' But it must 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *LM Ins. Corp. v. Criss for Estate of Szuhay*, 716 F. App'x 530, 533 (6th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Mere labels . . . are not enough[,]" *Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017), and the Court also "need not accept legal conclusions in the complaint as being true[,]" *Eye Ctrs. of Am., LLC v. Series Protected Cell 1, a Series of Oxford Ins. Co. TN, LLC*, No. 22-5138, 2022 WL 13983763, at *2 (6th Cir. Oct. 24, 2022) (citing *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 480 (6th Cir. 2020)), unless the complaint has "supported [them] with enough pleaded

facts[.]" *Bates*, 958 F.3d at 480. Nor should a court accept as true "a legal conclusion couched as a factual allegation[.]" *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

## III.    CONSIDERATION OF THE CONTRACT

As an initial matter, the Court must determine whether it may consider the terms of the contract between Silco and the insured in ruling on the Rule 12(c) motion. The contract was not attached to Ohio Security's complaint, but was, instead, attached to Silco's verified answer. (*See* Doc. No. 10-1, at 42–53.) On a Rule 12(c) motion, the court may consider only the pleadings themselves. *Max Arnold & Sons, LLC v. W.L. Hailey & Co., Inc.*, 452 F.3d 494, 503 (6th Cir. 2006). If "matters outside the pleadings are presented to and not excluded by the court" when ruling on a motion under Rule 12(b)(6) or 12(c), the Federal Rules require that "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

The term "pleadings" includes both the complaint and answer, Fed. R. Civ. P. 7(a), and "[a] copy of a written instrument which is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). "A 'written instrument' within the meaning of Rule 10(c), is a document evidencing legal rights or duties or giving formal expression to a legal act or agreement, such as a deed, will, bond, lease, insurance policy or security agreement." *Cote v. NewRez, LLC*, No. 1:18-cv-52, 2021 WL 1840563, at *3 (M.D. Tenn. May 7, 2021) (quoting *Steverson v. Walmart*, No. 3:19-cv-140, 2019 WL 3822179, at *2 (M.D. Tenn. Aug. 15, 2019) (further citation omitted)); *see Instrument*, Black's Law Dictionary (5th pocket ed. 2016) (defining "instrument" as a "written legal document that defines rights, duties, entitlements, or liabilities, such as a statute, contract, will, promissory note, or share certificate"). It therefore follows that the Court may

consider the complaint, the answer, and any written instrument, as that term is understood in Rule 10(c), that is attached to either pleading without the Rule 12(c) motion being converted into one for summary judgment. *See Doe v. Belmont Univ*., 334 F. Supp. 3d 877, 887 (M.D. Tenn. 2018) (citations omitted).

Here, the contract is specifically referenced in the answer and appended thereto. (Doc. No. 10 , at 2 ¶ 6 (identifying the agreement between Silco and the insured as Exhibit A); Doc. No. 10-1, Ex. A.) As a contract, it also clearly meets the definition of "written instrument" in Rule 10(c), as it sets forth the legal rights, duties, and obligations of the parties to the contract; namely, Silco and the insured. And because Ohio Security is asserting its rights in subrogation as the insured's subrogee, the contract also defines the legal rights, duties, and obligations of Silco and Ohio Security. *See Ohio Bur. of Workers' Comp. v. McKinley*, 956 N.E.2d 814, 820 (Ohio 2011) (explaining that "[a] subrogated insurer stands in the shoes of the insured-subrogor and has no greater rights than those of its insured-subrogor" (citations omitted)). Consideration of the contract, therefore, is consistent with Rule 12(c) and Rule 10(c) of the Federal Rules of Civil Procedure.

Additionally, Sixth Circuit case law provides that a court may consider other documents on a Rule 12(c) motion "so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Coll. Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)); *see also Sollenberger v. Sollenberger*, 173 F. Supp. 3d 608, 618 (S.D. Ohio 2016) (noting that even if a plaintiff neglects to append a governing contract to the complaint, the court may consult the contract to prevent a legally deficient claim from surviving a Rule 12(c) motion). Even though the complaint makes no

specific reference to a "contract" between the insured and Silco, it alleges that the insured "hired [Silco] to maintain the fire sprinkler system" on the insured's property. (Doc. No. 1, at 9 ¶ 6.) The Court finds that this reference to hiring Silco infers the existence of a contract between the parties. *See, e.g.*, *Bernard v. ADS Security, L.P.*, No. 5:17-cv-93, 2017 WL 6604594, at *2 (W.D. Ky. Dec. 22, 2017) (explaining that reference in complaint to plaintiff "being a paying customer of [Defendants] presupposes the existence of an agreement between the parties wherein Plaintiff paid for services provided by [Defendants, and t]he manifestations of those agreements are the contracts" attached to the Rule 12(c) motion). Additionally a document that defines the rights of the parties with respect to the "water event" at issue in this action is also central to the solitary claim in the complaint. Accordingly, Sixth Circuit case law also supports the consideration of the contract in the context of a motion for judgment on the pleadings.

But even if documents are considered part of the pleadings, or are otherwise referred to in the complaint and integral to the complaint's causes of action, the Court may not consider them "at the pleading stage if one of the parties questions the authenticity of the documents." *Rose v. Bersa*, No. 1:17-cv-252, 2020 WL 5210913, at *11 (S.D. Ohio Aug. 31, 2020) (citation omitted); *see Gascho v. Global Fitness Holdings, LLC*, 918 F. Supp. 2d 708, 720 (S.D. Ohio 2013) (refusing to consider unauthenticated copies of contracts offered in support of a motion to dismiss where the plaintiff "presented . . . a reasonable basis to question the validity, accuracy, or completeness of [the] documents"); *see also Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999) ("[W]hen a document is referred to in the complaint and is central to the plaintiff's claim . . . , the defendant may submit an authentic copy to the court to be considered on a motion to dismiss[.]" (quotation marks and citations omitted)).

Ohio Security does not deny the existence of a contract, and, as noted above, the complaint allegations infer the existence of a contractual relationship between Silco and the insured. Moreover, Ohio Security does not directly deny the authenticity of the document attached to Silco's verified answer as Exhibit A. Rather, it highlights the fact that the agreement "was not signed by [the] insured nor does [Silco] submit any other proof that [the] insured ever agreed to provisions" contained therein. (Doc. No. 12, at 3.) Silco responds by noting that the contract specifically provides that the insured's representative, Bilal Hussain, verbally approved the contract and its terms and conditions on November 28, 2021. (Doc. No. 14, at 1–2 (citing Doc. No. 10-1, at 42 ("Verbal Approval By: bilal hussain Approved On: November 28, 2021").).

"Under Ohio law, there must be a 'meeting of the minds' in order to form a legally binding contract." *CSX Transp., Inc. v. Occidental Chem. Corp*., 130 F. Supp. 2d 936, 941 (S.D. Ohio 2001) (citations omitted). "Expressions of assent are generally sufficient in order to demonstrate a meeting of the minds and Ohio law recognizes objective manifestations of intent." *Id*. (citation omitted). "Though parties ordinarily manifest their assent to a written contract by signing it, a party may manifest its assent by some other act or conduct." *Bruzzese v. Chesapeake Expl., LLC*, 998 F. Supp. 2d 663, 674 (S.D. Ohio 2014) (citations omitted); *see Tocci v. Antioch Univ*., 967 F. Supp. 2d 1176, 1200 (S.D. Ohio 2013) (noting that a signature is not required to show a party's assent to a contract unless the contract requires signatures). "Manifestation of mutual assent to an exchange requires that each party either make a promise or begin or render a performance . . . . The manifestation of assent may be made wholly or partly *by written or spoken words* or by other acts or by the failure to act." *Bruzzese*, 998 F. Supp. 2d at 673 (quoting *McSweeney v. Jackson*, 691 N.E.2d 303, 308 (Ohio Ct. App. 1996) (further citation omitted) (emphasis added)).

The Court finds that it may consider the contract attached to the verified answer in the context of the present Rule 12(c) motion. The authenticity of the document was attested to by the verified answer, and the verbal assent evidenced in the contract itself satisfies the requirement under Ohio law that there was a meeting of the minds between Silco and the insured. Under these circumstances, the Court's consideration of this document does not convert the Rule 12(c) motion into one for summary judgment. *See* Fed. R. Civ. P. 12(d).

## IV.    MOTION FOR JUDGMENT ON THE PLEADINGS

Silco insists that it is entitled to judgment on the pleadings for three reasons: (1) any right of subrogation was waived by the insured; (2) the action is time-barred because it was filed beyond the contractually agreed upon one-year limitations period;  and (3) the negligence action cannot stand in light of the parties' express contract. The first two reasons require consideration of the terms and conditions of the contract between Silco and the insured; the third reason requires only the existence of a governing contract, not consideration of any specific terms.

### A.  Waiver of Right of Subrogation

Ohio Security bases it right to recover from Silco upon its status as the subrogee for the insured. "Subrogation is the right of the insurer to be put in the position of its insured in order to pursue recovery from a third party legally responsible to the insured for a loss paid by the insurer." *Warmack v. Arnold*, 961 N.E.2d 1165, 1170 (Ohio Ct. App. 2011) (citation omitted). "Because an insurer is subrogated to or an assignee of only the rights of its insured or assignor, the rights of the insurer are no greater than those of its insured." *Id*. (citing *Auto. Ins. Co. v. Pennsylvania R.R. Co*., 14 N.E.2d 613 (Ohio 1938)); *see Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co*., 537 N.E.2d 624, 628 (Ohio 1989) (noting that "an insurer-subrogee cannot succeed to or acquire any right or

remedy not possessed by its insured" (citation omitted)). "Consequently, a release granted by an insured is an effective defense against later actions by an insurance company seeking to enforce its subrogation rights." *Warmack*, 961 N.E.2d at 1170 (citation omitted); *see Nationwide Mut. Fire Ins. Co. v. Solitrol, Inc.*, 672 N.E.2d 687, 692 (Ohio Ct. App. 1996) ("With regard to legal subrogation, the Supreme Court has previously held that parties to a contract may modify, extinguish or even completely destroy the right." (citing *Bogan v. Progressive Ins. Co.*, 521 N.E.2d 447 (Ohio 1988)); *see, e.g.*, *Valley Forge Ins. Co. v. Premier Recyclers Plastics, Inc.*, No. 22633, 2005 WL 3193836, at *3 (Ohio Ct. App. Nov. 30, 2005).

In *Valley Forge Insurance Company*, a property insurer brought an action in subrogation against its insured's commercial lessee, following a fire on the leased premises. The lease contained a subrogation waiver clause that provided, "Lessor and Lessee each agree to, and hereby to [sic], waive the rights of subrogation of their respective insurers." 2005 WL 3193836, at *3 (quoting lease provision). The trial court granted the lessee judgment as a matter of law on the strength of the subrogation waiver, and the appellate court affirmed. *Id.* Noting that it must give effect to the parties' expressed intent, the appellate court found that the "the intent of the parties is made clear and unambiguous from the language used in the lease agreement[.]" *Id.* In fact, the appellate court observed that it could not "imagine what could be more clear or unambiguous than the parties stating that they agree to 'waive the rights of subrogation of their respective insurers.'" *Id.* (quoting lease provision).

In the present case, the contract provided, in relevant part:

> In case of any claim or loss, Customer and Silco mutually agree that their respective insurance companies shall have no right of subrogation against the other on account thereof.

(Doc. No. 10-1, at 43, Sec. A.) If possible, the waiver provision in this case is even more explicit than the one at issue in *Valley Forge Insurance Company*. There is no doubt from the clear and unambiguous language of the contract that Silco and the insured intended to extinguish any rights held by each other's insurance company.[2] While Ohio Security complains its right of subrogation is "itself wholly independent" of any contract between its insured and Silco (*see* Doc. No. 12, at 5 (citation omitted)), "Ohio courts have repeatedly held that waiver-of-subrogation provisions [in a contract] are valid and enforceable." *Acuity v. Interstate Constr., Inc.*, No. 2007-P-74, 2008 WL 625097, at *2 (Ohio Ct. App. Mar. 7, 2008) (collecting cases); *see Sonitrol*, 672 N.E.2d at 693 (noting that "[s]ince Nationwide stood in the board's place and the board had waived its right of recovery against Sonitrol [in a security alarm contract], the trial court did not err in granting" judgment as a matter of law in favor of Sonitrol). Because Ohio Security can have no rights greater than that of its insured, and its insured clearly and unambiguously waived any right to recover in subrogation, Silco is entitled to judgment on the pleadings for this reason alone.

### B. Statute of Limitations

Ohio Security also resists Silco's argument that the present action is time-barred by the one-year limitations period set forth in the contract. It argues that, under Ohio law, it had four years to bring a negligence action against Silco, and that the shortening of that right by seventy-five percent would be unreasonable. (Doc. No. 12, at 3 (citing Ohio Rev. Code § 2305.09(D)

---

[2] The contract provides other evidence of the parties' intent to eliminate the right to recover property damage in subrogation. Under "General Terms & Conditions," the "<u>LIMITATIONS OF LIABILITY</u>" clause begins by stating that "Silco is not an insurer." (Doc. No. 10-1, at 43, Sec. A (underlining and capitalization in original).) Continuing, the clause provides, "[t]he amounts payable to Silco are based upon the value of the services and the scope of liability herein and are unrelated to the value of Customer's property or property of others located in the premises." (*Id.*) Further, the clause limits Silco's liability to $10,000. (*Id.*) These qualifications and/or limitations are consistent with the parties' mutual waiver of subrogation.

(providing for a four-year statute of limitations for negligence claims)).) Under Ohio law, parties to a contract may agree to shorten the limitations period, "provided that the fixed period of limitations is reasonable." *Thomas v. Allstate Ins. Co*., 974 F.2d 706, 709 (6th Cir. 1992) (citations omitted); *see Universal Windows  & Doors, Inc. v. Eagle Window & Door, Inc*., 689 N.E.2d 56, 59 (Ohio Ct. App. 1996) (similar); *Monreal Funeral Home, Inc. v. Farmers Ins. Co*., 937 N.E.2d 159, 165 (Ohio Ct. App. 2010) (holding that "parties to a contract may agree to limit the time for bringing an action to a period less than provided by [the] relevant statute of limitations so long as that period is reasonable" (citations omitted)); *see also Angel v. Reed*, 891 N.E.2d 1179, 1181 (Ohio 2008) (stating that a contract provision limiting a statute of limitations is enforceable so long as it is clear and unambiguous (quotation marks and citations omitted)).

There is no dispute that the "water event" that caused the damage to the insured's property occurred on February 3, 2022. (Doc. No. 1, at 9 ¶ 7.) Ohio Security waited almost two years (until January 11, 2024) to bring the present action. (*Id*. at 8.) The contract clearly and unambiguously provides, "No suit or action shall be brought against Silco more than one (1) year after the accrual of the cause of action." (Doc. No. 10-1, at 43, Sec. A.) If the one-year contractual limitations period applies, the present action is untimely. If, however, it does not apply, then the negligence claim is timely under the four-year limitations period for negligence claims in Ohio Rev. Code § 2305.09(D). The question is whether the one-year period is reasonable. *See Angel*, 891 N.E.2d at 1181; *Universal Windows & Doors*, 689 N.E.2d at 59 (noting that "[t]he United States Supreme Court has stated that in the absence of a statute to the contrary, a contract can limit the time for bringing an action if the time limit is reasonable" (citing *Order of United Commercial Travelers of Am. v. Wolfe*, 331 U.S. 586, 67 S. Ct. 1355, 91 L. Ed. 1687 (1947))).

12

"Ohio courts have routinely held one-year contractual limitation clauses are reasonable and enforceable." *Smith v. City of Barberton*, No. 1:20-cv-584, 2021 WL 752595, at *4 (N.D. Ohio Feb. 26, 2021) (collecting Ohio cases); *see Thomas*, 974 F.2d at 710 (finding one-year limitations period reasonable and enforceable); *Axios, Inc. v. Thinkware, Inc*., 1:15-cv-379, 2015 WL 5029227, at *4 (S.D. Ohio Aug. 26, 2015) (finding that one-year limitations period in licensing agreement was enforceable under Ohio law); *Brondes Ford, Inc. v. Habitec Sec*., 38 N.E.3d 1056, 1089 (Ohio 2015) ("As set forth above, we have determined that the one-year limitation set forth in paragraph 25 of the Agreement is reasonable."). And where an insured is bound by a contractual limitation of the time period for bringing suit, the insured's subrogee is bound by the same limitation. *See generally Bartelmay v. Body Flex Sports, Inc.*, No. 4:13-cv-767, 2013 WL 3149598, at *3 (N.D. Ohio June 18, 2013) ("Logic dictates that when an insured's tort claim is subject to a statute of limitations, so too is the insurer's subrogation claim." (citation omitted)).

Here, the language in the contract setting forth the one-year limitations period was clear, and the "[C]ourt[ is] constrained to apply the plain language of the contract." *City of St. Marys v. Auglaize Cty. Bd. of Commrs.*, 875 N.E.2d 561, 566 (Ohio 2007) (citation omitted); *see also Graham v. Drydock Coal Co*., 667 N.E.2d 949, 952 (Ohio 1996) ("The intent of the parties is presumed to reside in the language they chose to use in their agreement." (citation omitted)). As for reasonableness, Ohio Security argues that water damage claims often take time to investigate prior to seeking judicial intervention. It further argues that a one-year period would not allow for a meaningful period of settlement negotiations prior to initiating litigation. (Doc. No. 12, at 3–4.) Yet, Ohio Security was able perform sufficient investigation to put Silco (and other potential responsible parties) on notice of its claim in subrogation within weeks of the "water event," leaving

ample time to explore settlement before bringing suit. Ohio Security does not deny that, on March 15, 2022, its counsel sent Silco a letter identifying Ohio Security as the subrogee of the insured and indicating that its investigation to date showed that water left in the fire sprinkler system was responsible for the damage to the insured's property. (Doc. No. 10 ¶ 7; *see* Doc. No. 10-2 (Letter).) Ohio Security knew of the "water event" shortly after it occurred and certainly did not need a lengthy discovery period to identify its potential claim against Silco. (*See* Doc. No. 10-2, at 1 (advising Silco that it was placing all "potentially responsible parties on notice of [Ohio Security's] claim").) Under these circumstances, the Court finds that the one-year limitations period in the contract was reasonable and enforceable. *See, e.g.*, *Universal Windows & Door*, 689 N.E.2d at 59 (finding that one-year limitations period in dealer agreement was reasonable and enforceable where plaintiff knew of the breaches immediately and had time for settlement negotiations before bringing suit). Because the one-year limitations period is valid and enforceable, Ohio Security's subrogation action is also time-barred.[3]

### C.  No Independent Tort

As previously observed, Ohio Security does not challenge the existence of a contractual relationship between Silco and the insured, and, in fact, such a relationship can be inferred from the complaint. (*See* Doc. No. 1, at 9 ¶ 6 (noting that the insured "hired" Silco "to maintain the fire sprinkler system").) In light of the existence of a contract, Silco argues that Ohio Security's negligence claim is legally deficient because the duties upon which it is premised arise from the

---

[3] It is worth noting that, even if the Court accepted March 15, 2022—the date of Ohio Security's letter to Silco—as the date the one-year limitations period began to run, the negligence claim would still be untimely. Ohio Security was aware of the "water event" by March 15, 2022, at the latest, yet it did not file suit for another twenty-two months. Thus, even affording a period of discovery by Ohio Security, the action would be time-barred.

contract between Silco and the insured. (Doc. No. 14, at 3.) "[U]nder Ohio law, the existence of a contract action generally excludes the opportunity to present the same case as a tort claim." *Wolfe v. Cont'l Cas. Co.*, 647 F.2d 705, 710 (6th Cir. 1981). "[A] tort exists only if a party breaches a duty which he owes to another independently of the contract, that is, a duty which would exist even if no contract existed." *Id.*; *see Barrett-O'Neill v. Lalo, LLC*, 171 F. Supp. 3d 725, 747 (S.D. Ohio 2016) (similar) (citations omitted); *see also Netherlands Ins. Co. v. BSHM Architects, Inc.*, 111 N.E.3d 1229, 1236 (Ohio Ct. App. 2018) ("Where the causes of action in tort and contract are 'factually intertwined,' a plaintiff must show that the tort claims derive from the breach of duties that are independent of the contract and that would exist notwithstanding the contract." (citations omitted)). The question of whether a duty exists is a question of law for the Court to decide. *See Mussivand v. David,* 544 N.E.2d 265, 270 (Ohio 1989).

In *Netherlands Insurance Company*, an insurance company brought a claim in subrogation against the company that installed a roof drain system that purportedly caused damage to property owned by the insured. Raising a claim in negligence, the plaintiff alleged that the defendant: (1) "Carelessly, negligently, and improperly installed the roof drain system at the Subject Property;" (2) "Carelessly, negligently, and improperly failed to caulk the roof drain and spigot penetrations so as not to cause harm to the Subject Property;" (3) "Failed to perform the roofing services in a workmanlike manner;" and (4) "Otherwise, failed to exercise due care under the circumstances." 111 N.E.3d at 1233 (citing the complaint). Rejecting the notion that the duty to perform in a workmanlike manner was a duty owed separate and apart from the installation contract, the court of appeals held that the plaintiff's negligence action was precluded by a contract between the insured and the roofing company. *Id*. at 1239. In so ruling, the court reasoned that, "any duty to

perform the work correctly [is] related to the contract. The tort claim [was] intertwined in the contract and was not independent." *Id.*

Similarly, in *Barrett-O'Neill*, the plaintiff-homeowner brought suit against the defendant-estate liquidator for damages associated with the defendant's sale of the plaintiff's household goods and antiques. In addition to asserting a breach of contract claim, the plaintiff alleged that the defendant's actions in connection with the sale were negligent. 171 F. Supp. 3d at 747. In the amended complaint, the homeowner alleged that the estate liquidator breached its duties owed to the homeowner by performing a list of tasks in a negligent manner, including: failing to "properly label, inventory, store, market and advertise" the homeowner's goods; losing the homeowner's antiques and household goods; and improperly liquidating the homeowner's antiques and goods. *Id.* at 747–48 (quoting the amended complaint). The court ruled that the defendant was entitled to judgment as a matter of law on the negligence claim because each of the "alleged duties relate only to the parties' contractual relationship[.]" *Id.* at 748.

In its complaint, Ohio Security alleges that Silco "owed a duty to [its] insured to exercise reasonable care and caution in the maintenance of the fire sprinkler system[.]" (Doc. No. 1, at 10 ¶ 13.) It further alleges that Silco "breached this duty of care by committing" a series of negligent acts. (*Id.* at 10 ¶ 14.) Ohio Security argues that these individual actions represent duties, "which all exist independent from the contract between" its insured and Silco. (Doc. No. 12, at 5.) In particular, Ohio Security alleges in paragraph 14 of the complaint that Silco:

    (a) Carelessly and negligently left water in the fire sprinkler system while maintaining said system;

    (b) Carelessly and negligently fail[ed] to warn its customer of the dangers inherent in leaving water in the fire sprinkler system;

(c) Carelessly and negligently fail[ed] to train, supervise and instruct its employees or agents;

(d) Carelessly and negligently fail[ed] to follow applicable codes and standards in maintaining the fire sprinkler system;

(e) Carelessly and negligently fail[ed] to properly drain the fire sprinkler system, thereby creating the risk that a water event would occur; and

(f) Was otherwise careless and negligent in maintaining the fire sprinkler system.

(Doc. No. 1, at 10 ¶ 14.)

As was the case in *Barrett-O'Neill* and *Netherlands Insurance Company*, the duties Ohio Security identifies all arise out of the parties' contract; in this case, a contract covering the maintenance of the fire sprinkler system. The fact that Ohio Security has alleged that Silco performed its contract duties in a careless and negligent manner does not transform potential contract breaches into negligent acts. "In Ohio, a breach of contract does not create a tort claim." *Textron Fin. Corp. v. Nationwide Mut. Ins. Co*., 684 N.E.2d 1261, 1270 (Ohio Ct. App. 1996) (citation omitted). While "each contract contains a common law duty to perform the contract with care, skill, reasonable expedience and faithfulness[,]" such a duty "only describes how a party is to perform its contract obligations, i.e., it does not establish a duty independent of the contract." *Dana Ltd. v. Aon Consulting, Inc.*, 984 F. Supp. 2d 755, 767 (N.D. Ohio 2013) (quoting *Wells Fargo Bank, N.A. v. Fifth Third Bank*, 931 F. Supp. 2d 834, 840 (S.D. Ohio 2013)); *see, e.g.*, *Solid Gold Jewelers v. ADT Sec. Sys., Inc*., 600 F. Supp. 2d 956, 962  (N.D. Ohio 2007) (holding that there is no independent tort duty to perform maintenance of alarm system with care, skill, and faithfulness).

Ohio Security insists, however, that it has identified and pled a separate duty independent of the maintenance contract; namely, the duty "not to damage another's property[.]" (Doc. No. 12,

Case: 5:24-cv-00267-SL  Doc #: 17  Filed:  06/03/24  18 of 21.  PageID #: 199

at 5.) In support, Ohio Security cites *Lucas v. Eclipse Cos., LLC*, No. 23 MO 7, 2023 WL 8892516 (Ohio Ct. App. Dec. 18, 2023). In *Lucas*, the plaintiff-property owner entered into an agreement allowing the defendant-construction company ingress and egress on the plaintiff's private road during a construction project on nearby property. *Id*. at *1. In exchange for this access, the construction company agreed to move fill dirt and grade an area near the property owner's detached garage. *Id*. During the construction project, heavy machinery caused damage to the private road as it traveled to and from the construction site, and the property owner brought suit in negligence against the construction company. *Id*. at *1–2. In reversing the trial court's grant of summary judgment in favor of the construction company, the court of appeals found that, while the construction company was using the property owner's road to access its construction project, it had "a duty of care to avoid unreasonable or foreseeable harm to others and the property of others." *Id*. at *5–6. This duty, it found, was separate and apart from the contract, which covered the construction company's duty to move fill dirt for the property owner. *Id*. at *5 ("There is no claim [the construction company] failed to place the fill dirt as required or [it] was negligent in its contractual duty to place the fill dirt around the detached garage.") Had the damages stemmed from construction company's contractual duties (*i.e.*, the duty to move fill dirt and grade the homeowner's property), the appellate court noted, the property owner would have had a cause of action in contract for failure to perform contractual obligations in a workmanlike manner. *Id*.

Unlike the factual scenario presented in *Lucas*, Ohio Security's alleged damages are a direct result of Silco's contractual obligation to maintain the fire sprinkler system. The complaint makes clear that the damages to the property occurred due to Silco's alleged carelessness and negligence in performing the tasks associated with the maintenance of the fire sprinkler system.

(*See* Doc. No. 1, at 10 ¶ 14.) To suggest that Silco owed a separate duty to perform those duties in a way that resulted in no damage to the insured's property "ignores the fact that [Silco] would owe [Ohio Security] no duties whatsoever but for the contract." *Dana*, 984 F. Supp. 2d at 767 (holding plaintiff's "efforts to dress up its breach-of-contract claim in language sounding in negligence is insufficient to identify a duty independent of the contract"); *see Smith*, 2021 WL 752595, at *5 (noting that "[t]ort law is not designed . . . to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement" (quoting *Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc*., 835 N.Ed.2d 701, 704 (Ohio 2005) (further quotation marks and citation omitted))).

Because Ohio Security has not sufficiently alleged the existence of a duty that is independent of the underlying maintenance contract, there can be no liability in tort, and Ohio Security's negligence claim must be dismissed.

## V.  MOTION TO AMEND

As an aside, Ohio Security suggests that, should the Court find that its negligence claim is barred by the contractual waiver of subrogation rights, it "should be permitted to amend its Complaint to allege allegations of willful misconduct by [Silco], which would operate to create tort liability and/or void the waiver of subrogation clause." (Doc. No. 12, at 6 (citation omitted).) In support, it notes that Silco's "actions could have been willful and/or wanton, as the sprinkler system was not properly maintained causing significant damages to be incurred." (*Id*.)

Ohio Security's request to amend is deficient in several respects. First, instead of filing a proper motion to amend, Ohio Security buried its request at the end of its opposition brief. *See Town of Smyrna, Tenn. v. Mun. Gas Auth. of Georgia*, 129 F. Supp. 3d 589, 599 n.3 (M.D. Tenn. 2015) ("[A] request for leave to amend almost as an aside, to the district court in a memorandum

in opposition to the defendant's motion to dismiss is . . . not a motion to amend." (quotation marks and citations omitted)). Second, Ohio Security failed to attach to its request a proposed amended complaint or otherwise provide a meaningful description of the additional factual allegations it wishes to advance. "Normally, a party seeking an amendment should attach a copy of the amended complaint." *Kuyat BioMimetic Therapeutics, Inc*., 747 F.3d 435, 444 (6th Cir. 2014). While Ohio Security suggests that it would allege that Silco's actions were willful, it fails to identify the factual allegations that would support such a conclusion. At best, it suggests that because Silco's actions may have been negligent, it is possible that they were willful. (*See* Doc. No. 12, at 6.) "[D]istrict courts are not required to engage in a guessing game as to what [the plaintiff] might plead to save her claim." *Justice v. Petersen*, No. 21-5848, 2022 WL 2188451, at *3–4 (6th Cir. June 17, 2022) (alteration in original) (quotation marks and citations omitted). Ohio Security's failure to file a proper motion with a copy of a proposed amended complaint, or otherwise adequately inform the Court of the nature of its proposed amendment requires that leave to amend be denied. *See Kuyat*, 747 F.3d at 444.

But even if Ohio Security had presented a properly supported motion to amend, the request for leave would still be denied. In general, a court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "But a court need not grant a motion to amend when the reason for amendment is improper, such as . . . *futility of amendment*[.]" *Skatemore, Inc. v. Whitmer*, 40 F.4th 727, 737 (6th Cir. 2022) (emphasis in original) (internal quotation marks and citation omitted). An amendment is futile when, after including the proposed changes, the complaint still "could not withstand a Rule 12(b)(6) motion to dismiss." *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010) (quoting *Rose v. Hartford*

*Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (further citation omitted)).

Without decided whether Ohio Security's unknown factual allegations relating to willful misconduct would serve to defeat the waiver of subrogation clause, such an amendment would not save the complaint from being dismissed as time-barred. And more fundamentally, allegations that Silco intentionally breached its duties would not transform the "contractual nature" of Ohio Security's allegations into ones capable of supporting a tort claim. *See Textron Fin. Corp.*, 684 N.E.2d at 1270 (noting that the "[t]he motive of a breaching party is irrelevant to a contract action" (citing *Wolfe*, 647 F.2d at 710)); *Solid Gold Jewelers*, 600 F. Supp. 2d at 960 ("Under Ohio law, 'it is no tort to breach a contract, regardless of motive.'" (quoting *Canderm Pharm., Ltd v. Elder Pharms., Inc.*, 862 F.2d 597, 602 (6th Cir. 1988) (further citations omitted))). Because the proposed amendment would not defeat a motion to dismiss Ohio Security's request for leave to amend is denied for this additional reason.

## VI.    CONCLUSION

For the foregoing reasons, Silco's motion for judgment on the pleadings is granted, and this case is dismissed.

**IT IS SO ORDERED.**


Dated: June 3, 2024                                   _____
                                                      **HONORABLE SARA LIOI**
                                                      **CHIEF JUDGE**
                                                      **UNITED STATES DISTRICT COURT**